**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **DAVID J. REILLY**<br><br>         **Plaintiff,**<br><br>     **v.**<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>         **Defendant.** | **Civil Action No. 18-15988 (ES)**<br><br>**OPINION** |

MᴄNᴜʟᴛʏ, Dɪsᴛʀɪᴄᴛ Jᴜᴅɢᴇ

Before the Court is plaintiff David J. Reilly's appeal of the Commissioner of Social Security's decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. § 423. (*See* DE 1). I decide this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons below, I vacate the Commissioner's decision and remand this matter for further proceedings consistent with this Opinion.

## I.    BACKGROUND

Because the Court writes primarily for the benefit of the parties, only the essential facts are recounted here; additional facts are cited throughout the Court's analysis. On July 2, 2014, Reilly filed a claim for DIB and on August 6,

2014, filed a claim for SSI, alleging disability beginning January 21, 2009, consisting of (i) a cardiac impairment following a heart valve replacement in 2005, (ii) eczema, (iii) hypothyroidism, and (iv) joint pain. (R.[1] at 74–75; 85–86 & 187). Reilly's claims were initially denied on February 10, 2015, and then denied upon reconsideration on May 4, 2015. (*Id.* at 122–126 & 128–135). Reilly requested a hearing, which was held before Administrative Law Judge ("ALJ") Sharon Allard on March 15, 2017. (*Id.* at 40–73). ALJ Allard issued a decision on August 18, 2017, denying DIB and SSI on the grounds that Reilly is not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. (*Id.* at 29–34). Reilly then sought review from the Appeals Counsel (*id.* at 184–86), and on September 12, 2018, the Appeals Counsel denied the request for review (*id.* at 1–4).

Reilly filed the instant appeal on November 9, 2018. This matter is fully briefed and ripe for determination.

## II.   LEGAL STANDARDS

### A.   Standard of Awarding Benefits

To receive DIB under Title II or SSI under Title XVI, a plaintiff must show that he is disabled within the definition of the Act. Disability is defined as the inability to "engage in any substantial gainful activity by reason of any

---

[1] Citations to the record will be abbreviated as follows:

     R. = Administrative Record, DE 9
     Mov. Br. = Reilly's moving brief in support of this appeal, DE 15
     Opp. Br. = the Commissioner's opposition brief, DE 18
     Reply Br = Reilly's reply brief, DE 19

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). The individual's physical or mental impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).[2]

The Secretary of Health and Human Services has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520 & 416.920. If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). The burden rests on the plaintiff to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden shifts to the Commissioner. *Id.*

**Step One**. At step one, the plaintiff must demonstrate that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are

---

[2] In addition, to receive DIB or SSI under the Act, a claimant must show that he was insured under the relevant program "at the time of onset of his disability." *Kelley v. Barnhart*, 138 F. App'x 505, 507 (3d Cir. 2005). A claimant must also satisfy the insured status requirements of 42 U.S.C. § 423(c). As ALJ Allard explained, Reilly claimed to be disabled as of January 31, 2009, and was insured through December 31, 2013. (R. at 29).

usually done for pay or profit. 20 C.F.R. §§ 404.1572(a) & 416.972(a), (b). If an individual engages in substantial gainful activity, he is not disabled under the regulation, regardless of the severity of his impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the plaintiff demonstrates he has not engaged in substantial gainful activity, the analysis proceeds to step two.

**Step Two**. At step two, the plaintiff must demonstrate that his medically determinable impairment or the combination of his impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). An impairment or combination of impairments do not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

**Step Three**. At step three, the ALJ must assess the medical evidence and determine whether the plaintiff's impairments meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

**Step Four**. If a plaintiff is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether, as of the date last insured, the plaintiff had the residual functional capacity ("RFC") to

perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work he had done in the past, the analysis proceeds.

   ***Step Five***. In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on his age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

   **B.    Standard of Review**

   The Court applies plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. §§ 405(g) & 1383(c)(3); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

   Importantly, the Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Thus, this Court is

limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

### III.   ALJ ALLARD'S DECISION

Here, ALJ Allard determined that Reilly was not disabled at step two of the aforementioned analysis. ALJ Allard concluded that Reilly's eczema, hypothyroidism, status post aortic valve replacement and pancreatic cysts constituted "medically determinable impairments." (R. at 31). In connection with these impairments, ALJ Allard stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p." (*Id.* at 32). ALJ Allard "also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 et seq. and 416.927 et seq. and SSR 17-2p." (*Id.*).

To evaluate Reilly's alleged symptoms, ALJ Allard followed the required two-step process, first looking at whether any medically determinable impairment could be reasonably expected to produce the claimant's pain or other symptoms; and second, evaluating the intensity, persistence, or functionally limiting effects of the pain or other symptoms. (*Id.*); *see Torres v. Comm'r of Soc. Sec.*, No. 15-6344, 2016 WL 5339724, at *3 (D.N.J. Sept. 23,

2016) (describing the two-step process for evaluating symptoms); *see also* 20 C.F.R. §§ 404.1529(d)(1) & 416.929(d)(1) ("Your symptoms . . . are considered in making a determination as to whether your impairment or combination of impairment(s) is severe").

At step one of the symptom analysis, ALJ Allard determined that the claimant's medically determinable impairments could be expected to produce the alleged symptoms. Specifically, ALJ Allard acknowledged Reilly's complaints of eczematous lesions in his foot and hands, the corresponding sores and breaking of the skin, and related joint pain. (R. at 33). She also acknowledged Reilly's complaints of fatigue and shortness of breath, which could be attributed to his history of aortic valve replacement, long-term use of anticoagulants, and the medication he takes for his thyroid condition. (*Id.*). Nevertheless, at step two, ALJ Allard determined that Reilly's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 32–33.) In reaching this decision, ALJ Allard relied on diagnostic findings in the record which she treated as inconsistent with the claimant's allegations of shortness of breath. (*Id.* at 33). She also relied on clinical findings in the form of a consultative examination which returned "normal findings with no significant indicators of functional limitations." (*Id.*). Specifically, ALJ Allard highlighted Reilly's normal gait, his ability to walk on heels and toes, his ability to complete a full squat, his hand and finger dexterity bilaterally, his normal grip and pinch strength, his full range of

motion of the joints in the shoulders, elbows, forearms, and wrists, and the lack of evidence of any joint abnormalities or muscle atrophy in either hand. (*Id.*). ALJ Allard also focused on then-recent treatment records showing that Reilly's "skin presented with no rashes, ulcers, indurations, or subcutaneous nodules"; that his "left wrist presented with no swelling, deformities or crepitations"; and that Reilly "presented with full range of motion and with normal gait and posture." (*Id.*). Finally, ALJ Allard afforded "significant weight" to opinion evidence from state agency medical experts Alka Bishnoi, M.D., and Howard Goldbas, M.D. (*Id.*). Dr. Bishnoi assessed the medical record and in October 2014, opined that Reilly's condition "caused a slight impact on work-related functioning and was not severe." (*Id.*). Dr. Goldbas affirmed Dr. Bishnoi's opinion on reconsideration in 2015. (*Id.*). ALJ Allard explained that she afforded these opinions significant weight because they are "consistent with the medical evidence of record, including diagnostic and clinical findings within normal limits." (*Id.*). Based on the foregoing, ALJ Allard concluded that Reilly did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities. (*Id.*).

## IV.   DISCUSSION

Reilly challenges ALJ Allard's decision for two reasons: First, he argues that ALJ Allard erred in determining that he did not have a severe impairment or combination of impairments. (Pl. Mov. Br. at 18–21). Second, he argues that ALJ Allard's finding with respect to his credibility is not supported by substantial evidence. (*Id.* at 24–25). In addition, Reilly challenges the Appeals

Council's refusal to consider additional medical evidence submitted in support of his request for review. (*Id.* at 22–23). The Commissioner opposes each ground for remand.

### A.   ALJ Allard's Step Two Analysis

Step Two denials do not often reach this Court *via* the appeal process. No doubt that scarcity is attributable, in part, to the fact that "the burden placed on an applicant at step two is not an exacting one." *McCrea*, 370 F.3d at 360. "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85–28). Any doubts as to whether this burden has been met are to be resolved in favor of the applicant. *Id.* In other words, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell*, 347 F.3d at 546. Given "this limited function," a decision to deny benefits at step two should receive "close scrutiny." *McCrea*, 370 F.3d at 360. Nevertheless, a denial of benefits at step two does not warrant "a more stringent standard of review"; here, as elsewhere, the Court must affirm the ALJ's decision if it is "supported by substantial evidence on the record as a whole." *Id.* at 360–61.

In arguing that ALJ Allard erred in her step two analysis, Reilly maintains that ALJ Allard misapplied the regulations as to the severity requirement because Reilly "clearly satisfied" that threshold inquiry. (Pl. Mov.

Br. at 21). Although framed in terms of misapplied law, Reilly's argument is grounded in claims that ALJ Allard ignored certain evidence and gave other evidence conclusory consideration; in Reilly's view, "the objective evidence in this case is more than sufficient to establish" severity. (*Id.* at 20). Reilly's challenge is best viewed as a challenge to ALJ Allard's fact finding.

To the extent Reilly invites the Court to perform again the ALJ's weighing of the evidence tending to support or negate a finding of disability, I must decline to do so. Under the substantial evidence standard, the Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. Nevertheless, based on some of the deficiencies identified by Reilly, I conclude that such weighing does not sufficiently appear on the record, and I therefore cannot conduct a meaningful review of ALJ Allard's decision. *See Burnett v. Commissioner of SSA*, 220 F.3d 112, 119 (3d Cir. 2000).

To start, Reilly based his application on four impairments: eczema, hypothyroidism, status post aortic valve replacement, and joint pain. Although ALJ Allard considered the first three to be medically determinable impairments (R. at 31), there is no sufficient explanation of the ALJ's rejection of Reilly's joint pain as an impairment. There is some discussion of joint pain caused by Reilly's skin condition (*Id.* at 33), but the ALJ does not specifically address other potential sources of joint pain that are evident from the record (*e.g.,*

Reilly's arthritic left wrist and the cyst in his right wrist[3]). In her discussion of the medical evidence, ALJ Allard briefly discusses the functional capacity of Reilly's joints, but it is not clear whether, in doing so, ALJ Allard is addressing all potential sources of Reilly's joint pain, or only Reilly's allegations of "joint pain secondary to his skin disorder." (*See id.*).

Second, although ALJ Allard considered Reilly's hypothyroidism as a medically determinable impairment, it is not clear why she determined that it was not severe. The ALJ's only mention of Reilly's thyroid condition is her statement that "the claimant takes medications for his thyroid condition, which increase shortness of breath and fatigue." (*Id.* at 32). The ALJ discounts Reilly's allegations of shortness of breath, citing to certain chest x-rays, but does not further discuss his fatigue. (*Id.* at 33). In addition, this brief discussion seems to be confined to symptoms resulting from Reilly's thyroid *medication*, not Reilly's thyroid *condition*. A fuller discussion of Reilly's thyroid condition is necessary to permit meaningful review.

Third, ALJ Allard concluded that Reilly's eczema, hypothyroidism, status post aortic valve replacement and pancreatic cysts constituted "medically determinable impairments." (*Id.* at 31). Yet Reilly's pancreatic cysts are not substantively discussed in the ALJ's opinion. There is one mention of the

---

[3] The cyst was the subject of discussion at Reilly's hearing before ALJ Allard. Specifically, in response to ALJ Allard's questioning about any other relevant conditions, Reilly indicated that he had to see an orthopedic surgeon, and that he had seen a rheumatologist for a potential cyst in his wrist. (R. at 57). ALJ Allard asked that Reilly submit the relevant x-rays, if possible, (*id.* at 58), and he apparently did so (*see* R. at 620–624). Nevertheless, the cyst is not discussed in the decision.

pancreatic cyst after it is listed as an impairment (R. at 33), but the sentences that follow appear to address other conditions and symptoms. Again, the ALJ's rationale for concluding that this condition did not constitute a severe impairment is unstated.

Finally, Reilly argues that ALJ Allard ignored his ocular herpes zoster. (Pl. Mov. Br. at 20). This condition, although not raised in Reilly's initial application, was mentioned by Reilly at his hearing before ALJ Allard and is substantiated in the record. (R. at 55 & 57; *id.* at 634 (noting ocular herpes zoster)). Specifically, at the hearing, ALJ Allard asked Reilly whether there was anything else she should know about why he was unable to work. (*Id.* at 55). Reilly indicated that his vision was "on its way out," and that he suffered from ocular herpes in his right eye. (*Id.*). ALJ Allard inquired as to whether Plaintiff saw a doctor for this condition, what the state of his vision was, and whether he wore glasses. (*Id.* at 55–56). Reilly indicated that he did not see a doctor because "there's nothing that any ophthalmologist will ever do for it because of the risk of another flare-up of ocular herpes." (*Id.* at 56). He also informed ALJ Allard that he did not know what his vision was but stated that the Department of Motor Vehicles was not going to renew his license because of his sight. (*Id.*). Other than a scar on his eye, Reilly did not have anything to show ALJ Allard that his vision was declining, and he acknowledged that he had not gone to a doctor "in the last two, three, four years" for his eyes. (*Id.* at 56–57).

Despite the back and forth at the hearing, this condition is not discussed in ALJ Allard's decision. The Administration urges that any omission was

harmless, based on a lack of medical evidence pertaining to the limiting effects of Reilly's ocular herpes. *See Jankowski v. Comm'r of Soc. Sec.*, No. 19-16424, 2020 WL 5810568, at *6 (D.N.J. Sept. 30, 2020) (concluding that remand was not warranted where there was "little in the medical record to which the ALJ could have referred in considering any functional limitations."). Nevertheless, where a condition is credibly suggested, the ALJ may have a duty to see that the record is developed appropriately. *See Keveanos v. Berryhill*, No. 18-3421, 2019 WL 1500624, at *8 n. 9 (D.N.J. Apr. 5, 2019) (citing 20 C.F.R § 404.1512(b)(1); *Sims v. Apfel*, 530 U.S. 103, 111, 120 S. Ct. 2080 (2000)).

I am remanding in any event for a more thorough explanation of why Reilly's conditions—either alone or in combination with one another—do or do not constitute a severe impairment. On remand, the ALJ should make an initial determination as to the nature, severity, and relevance of this ocular condition as well.[4]

Without a more substantial discussion of the basis of the ALJ's decision on the issues discussed *supra*, I cannot determine whether the decision is supported by substantial evidence. *See Burnett*, 220 F.3d at 119. Specifically, it would be futile to analyze ALJ Allard's conclusions about Reilly's eczema and

---

[4] Because I remand for other reasons, I do not reach the issue of whether it was error for the Appeals Council to decline to consider the supplemental evidence regarding Reilly's ocular herpes zoster from Englewood Eye Center. While Reilly stated that he suffered from this condition at the time of the hearing, the records themselves appear to date from after ALJ Allard's decision. The ALJ should therefore determine whether they constitute new evidence which "relates to the period on or before the date of the hearing decision." *See Paul v. Berryhill*, No. 17-6343, 2019 WL 669802, at *4 (D.N.J. Feb. 15, 2019) (declining to consider medical records which involved review of earlier records, where they opined on conditions post-dating the ALJ's decision).

13

status post aortic valve replacement because those conditions must ultimately be considered in combination with the others. Thus, I do not substantively address the remainder of Reilly's arguments with respect to ALJ Allard's severity determination.

### B.      ALJ Allard's Credibility Determination

Reilly also argues that ALJ Allard's finding with respect to his credibility is not supported by substantial evidence. Specifically, he argues that in discrediting Reilly's statements concerning the intensity, persistence and limiting effects of his symptoms, ALJ Allard relied only on "cherry-picked findings of less symptomatic examinations or statements devoid of context." (Pl. Mov. Br. at 24–25).

An ALJ's credibility determination is afforded deference. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses"). And "[w]hile an ALJ should consider an applicant's subjective complaints, . . . the applicant bears the burden of producing medical evidence to support those complaints." *Arroyo v. Commr of Soc. Sec.*, 82 F. App'x 765, 768 (3d Cir. 2003) (internal citation omitted).

Here, I do not find error in the way in which ALJ Allard evaluated Mr. Reilly's credibility. ALJ Allard reviewed Reilly's subjective complaints of pain and his other symptoms but weighed the same against conflicting evidence in the record and cited to that conflicting evidence in explaining her decision. (R.

14

at 32–33); *see Harkins v. Comm'r of Soc. Sec.*, 399 F. App'x 731, 735 (3d Cir. 2010); *Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 735 (3d Cir. 2010). Nevertheless, "[b]ecause further discussion of the medical evidence by the ALJ is required, the Court is unable to fully evaluate the ALJ's weighing and credibility assessments of that evidence to determine whether all of her conclusions are supported by the substantial evidence on the record." *Greenberg v. Comm'r of Soc. Sec.*, No. 16-2312, 2018 WL 645966, at *12 (D.N.J. Jan. 31, 2018).

Moreover, it is not appropriate to affirm on the basis of ALJ Allard's credibility determination being supported by substantial evidence. *See Braker v. Comm'r of Soc. Sec.*, No. 16-0170, 2017 WL 374476, at *14 (D.N.J. Jan. 26, 2017). The ALJ's reconsideration of the medical evidence in accordance with the foregoing opinion may well affect her credibility determinations; I therefore leave the credibility issue open for the ALJ's reconsideration in light of all the evidence.

## V.    Conclusion

For the foregoing reasons, I VACATE the decision of the Commissioner and REMAND this matter for further proceedings in accordance with this Opinion. In doing so, I do not dictate an ultimate finding as to the presence, or not, of a disability. An appropriate Order accompanies this Opinion.

/s/ Kevin McNulty
_____
Kevin McNulty, U.S.D.J.

15